IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE HUESTON GREEN,

    Plaintiff,

vs.                                                                                                1:21-cv-00087-LF-JHR

MERRICK B. GARLAND,[1]
Attorney General, U.S. Department of Justice,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendant Merrick B. Garland's Motion to Dismiss for Failure to State a Claim. Doc. 8. Plaintiff Michelle Hueston Green opposes the motion. Doc. 16. Having considered the parties' submissions and the relevant law, I GRANT the motion in part and DENY it in part.

**I.**     **Factual Background**

In ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true all facts alleged in the complaint.[2] *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). It also must view these factual allegations in the light most favorable to the plaintiff. *See id.* Viewing the facts alleged in the complaint in this manner, the relevant facts are as follows:

---

[1] Merrick B. Garland is automatically substituted for Jeffrey A. Rosen pursuant to FED. R. CIV. P. 25(d).

[2] Ms. Hueston Green follows the local rules pertaining to motions for summary judgment in responding to the factual statements in defendant's motion. *See* Doc. 16 at 1–9; D.N.M.LR-Civ. 56.1(b). Because this is a motion brought under Rule 12(b)(6), the Court will rely only on the complaint to determine the facts.

Plaintiff Michelle Hueston Green began working for the Federal Bureau of Investigation (FBI) in December 1990 as a support employee.  Doc. 1 ¶ 11.  She later became a Supervisory Financial Operations Specialist.  *Id.* ¶ 12.  Ms. Hueston Green worked for the FBI for nearly three decades and received positive job performance reviews and numerous awards.  *Id*. ¶ 14.  At some point before October 2015, Assistant Special Agent in Charge (ASAC) Robert White became Ms. Hueston Green's supervisor.  *See id.* ¶¶ 18, 19.  ASAC White and Ms. Hueston Green had a "horrible working relationship," and in October 2015, Mr. White gave Ms. Hueston Green an outlier negative performance appraisal.  *Id.* ¶¶ 16, 18.  During 2016, Ms. Hueston Green's husband became seriously ill and eventually died.  *Id.* ¶ 20.  During this time, Ms. Hueston Green suffered from anxiety and depression, and needed to take significant leave to attend to her own heath and the needs of her family.  *See id.* ¶¶ 20–25.  ASAC White was unsympathetic to Ms. Hueston Green's situation and treated her poorly during this time.  *See id.* ¶¶ 25–30.

On May 4, 2017, Ms. Hueston Green filed an EEO complaint against ASAC White.  *Id.* ¶ 31.  Ms. Hueston Green's complaint included allegations that ASAC White treated her with hostility and that he made an inappropriate sexual comment about her on a performance evaluation.  *Id.* ¶ 32.  The FBI and Ms. Hueston Green settled her complaint against ASAC White in July 2017, and in the agreement the FBI promised that "there shall be no discrimination or retaliation of any kind against the Aggrieved [Ms. Hueston Green] . . . ."  *Id.* ¶¶ 34, 36.

Unbeknownst to Ms. Hueston Green, ASAC White compiled a file against her over the next year to try to get her fired or suspended.  *Id.* ¶ 39; *see also id.* ¶ 74 ("When ASAC White retired and filed the OPR against Ms. Hueston Green, he had already compiled a file on her time for 3 entire years (2016-2018).").  In August 2018, the FBI initiated an investigation of Ms.

Hueston Green.³  *Id.* ¶ 40.  On October 11, 2019, Ms. Hueston Green and her lawyer learned from reviewing the FBI's investigative file that ASAC White had lodged the complaint that initiated the FBI investigation of her.  *Id.* ¶ 43.  ASAC White lodged his complaint against Ms. Hueston Green in June 2018, approximately one week before he retired, and almost a year after her EEO complaint against him was resolved.  *Id*. ¶ 77.  The Special Agent in Charge who approved the referral of ASAC White's complaint against Ms. Hueston Green for investigation had participated in the mediation of Ms. Hueston Green's complaint against ASAC White, and he was aware of the history between Ms. Hueston Green and ASAC White.  *Id.* ¶¶ 78, 79.  This same official then became the head of the section that conducted the investigation of Ms. Hueston Green, which ultimately resulted in her suspension and termination.  *Id.* ¶¶ 78, 80.

Ms. Hueston Green alleges that ASAC White lodged the complaint against her in retaliation for her EEO complaint against him.  *See id.* ¶¶ 39, 44.  Many of the allegations raised during the FBI's investigation of her were complaints that ASAC White had raised in relation to her EEO complaint against him, and which were settled in July 2017.  *See id.* ¶¶ 46–54.  In addition, ASAC White became aware of two disgruntled employees who did not like her, and he directed those employees to spy on her and keep a log of her activities to support his complaint.  *See id.* ¶¶ 55–71.

As a result of the FBI's investigation of her, Ms. Hueston Green was suspended without pay for six months, and effective November 15, 2019, the FBI terminated her employment.  *Id.* ¶¶ 72, 80.  On October 22, 2019, Ms. Hueston Green again contacted the EEO office, and she

---

³ Ms. Hueston Green alleges in her complaint that the FBI's Office of Professional Responsibility conducted the investigation.  Doc. 1 ¶ 40.  Mr. Garland states in his motion that it actually was the FBI's Inspection Division.  Doc. 8 at 2, ¶ 5.  Because this distinction makes no difference to the Court's analysis, the Court simply will refer to the FBI's investigation.

filed a second EEO complaint on December 4, 2019. *See id.* ¶ 7; *see also* Doc. 8-2 (Ms. Hueston Green's EEO Complaint of Discrimination). Ms. Hueston Green received the Department of Justice's Final Agency Decision on November 5, 2020, which entitled her to institute a civil action within 90 days of receiving the decision. Doc. 1 ¶ 8. She filed this lawsuit on February 3, 2021.

## II. The Complaint

The single count in Ms. Hueston' Green's complaint alleges a violation of Title VII of the Civil Rights Act of 1964 based on a hostile work environment and retaliation for protected EEO activity. Doc. 1 at 11. Ms. Hueston Green does not specify whether the hostile work environment claim is based on her membership in a protected class. *See id.* ¶¶ 84–92. She claims, though, that the FBI retaliated against her after she complained about ASAC White and his treatment of her, and that her "complaints about ASAC White were a substantial factor in the decision to lodge a complaint and investigation against her." *Id.* ¶¶ 86–87.

## III. Discussion

### A. Standard of Review

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While " 'a court must accept as true all of the allegations contained in a complaint,' " this rule does not apply to legal conclusions. *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id*. (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

If the parties present matters outside the complaint that are not excluded by the court in relation to a 12(b)(6) motion, then the court should treat the motion as one for summary judgment under Rule 56 and not as a motion to dismiss. FED. R. CIV. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). Notwithstanding this general rule, however, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007). Dismissal is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1162–63 (10th Cir. 2018) (claims properly dismissed under Rule 12(b)(6) because plaintiff failed to allege required

5

elements of duty, materiality, and scienter as required by Private Securities Litigation Reform Act).

## B. Exhaustion of Administrative Remedies

Defendant Garland first argues that the Court should dismiss Ms. Hueston Green's complaint because Ms. Hueston Green failed to exhaust her administrative remedies with respect to her hostile work environment claim because she did not contact an EEO counselor with 45 days of the discrimination, and because her EEO complaint did not raise a hostile work environment claim. Doc. 8 at 8–12. Defendant also argues that Ms. Hueston Green failed to exhaust her retaliation claim to the extent it is based on ASAC White's complaint against her and the resulting FBI investigation of her. *Id.* at 13–15. For the reasons explained below, I agree that Ms. Hueston Green failed to exhaust her administrative remedies with respect to her hostile work environment claim, and I dismiss that claim without prejudice. With respect to defendant's argument that Ms. Hueston Green failed to exhaust her administrative remedies on the retaliation claim, defendant relies on a document that is not properly before the Court on a Rule 12(b)(6) motion. The Court therefore declines to dismiss any aspect of Ms. Hueston Green's retaliation claim for failure to exhaust her administrative remedies.

"Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (internal quotation marks and citation omitted). Part 1614 of Chapter 29 of the Code of Federal Regulations sets forth the applicable procedures. *See id.* "Before a federal civil servant can sue h[er] employer for [discrimination or retaliation], [s]he must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter

alleged to be discriminatory.' " *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 CFR § 1614.105(a)(1)). The employee also must file a formal complaint with the agency that is "sufficiently precise . . . to describe generally the action(s) or practice(s) that form the basis of the complaint." 29 C.F.R. §§ 1614.106(a), (b), (c). Once the employee receives the agency's final decision, the employee must file a civil action in federal district court within a specified period of time if the employee is dissatisfied with the agency's decision. *See* 29 C.F.R § 1614.110.

The exhaustion requirement is a claims-processing rule that an employer may raise as an affirmative defense;[4] it is not a jurisdictional prerequisite to filing suit. *Hickey*, 969 F.3d at 1118; *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) ("[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."). It therefore is subject to the same waiver and estoppel principles that apply to other affirmative defenses, *Lincoln*, 900 F.3d at 1186 n.11, although courts should apply such equitable doctrines sparingly, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Because it is a mandatory rule, courts must enforce the exhaustion requirement if the employer properly raises it. *See Davis*, 139 S. Ct. at 1849–51.

---

[4] "Although failure to exhaust is . . . an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

1.  *Ms. Hueston Green failed to administratively exhaust her hostile work environment claim.*

Ms. Hueston Green's allegations of a hostile work environment revolve entirely around ASAC White's treatment of her. Ms. Hueston Green states in her complaint that ASAC White subjected her to a hostile work environment beginning in 2015 and continuing until his retirement in 2018. Doc. 1 ¶ 19. ASAC White retired in about June 2018. *Id.* ¶ 77. But Ms. Hueston Green did not contact her EEO counselor until October 22, 2019, *id.* ¶ 7, more than a year after ASAC White retired and the hostile work environment ended. Although Ms. Hueston Green also states that she previously had filed an EEO complaint against ASAC White in May 2017 based on his treatment of her, *id.* ¶¶ 7, 16–33, that complaint was resolved in July 2017, *id.* ¶ 34. The 2017 EEO complaint does not salvage any additional hostile work environment claims that may have accrued after July 2017.

In addition, Ms. Hueston Green did not raise a claim of hostile work environment in the formal EEO complaint she filed on December 4, 2019. *See* Doc. 8-2. Although Ms. Hueston Green did not attach the formal EEO complaint to her complaint in this case, the Court may consider it because Ms. Hueston Green refers to the EEO process in her complaint, and the formal EEO complaint is essential to her allegation that she "exhausted her administrative remedies." *See* Doc. 1 ¶¶ 7–9; *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"); *see also Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164–65 (10th Cir. 2018) (plaintiff's claim in federal court is limited by the scope of her administrative claim of discrimination or retaliation). Ms. Hueston Green does not dispute

8

the authenticity of the formal EEO complaint attached to the motion to dismiss. *See* Doc. 16 at 3, ¶ 10 ("admitting" allegation in Doc. 8 at 4, ¶ 16, which attaches formal complaint to defendant's motion to dismiss).

On her formal EEO complaint, Ms. Hueston Green only checked the box next to "Reprisal"; she did not check any box suggesting that she had been subjected to a hostile work environment. *See* Doc. 8-2 at 1. In answer to the request that she explain how she believed she was discriminated against, she stated that she filed an EEO complaint against ASAC White in 2017 which was settled. *See id.* at 1–2. After the 2017 EEO complaint was settled, ASAC White began compiling a file on Ms. Hueston Green and recruited other employees to provide information about Ms. Hueston Green that ASAC White could use to try to get her fired. *See id.* at 2. Shortly before ASAC White's retirement in 2018, he filed his complaint against her, which resulted in an investigation and ultimately her termination, effective November 15, 2019. *Id.* She further stated that it was "obvious based on the timing of the August 2018 OPR filing, which occurred one week before [ASAC] White's retirement, . . . that White filed the OPR against Ms. Hueston Green in retaliation for the original EEO filed against him in 2017." *Id.* In short, nothing in the formal EEO complaint suggested that Ms. Hueston Green was complaining about a hostile work environment. She only complained about "reprisal" and "retaliation." Ms. Hueston Green failed to administratively exhaust her hostile work environment claim.

Ms. Hueston Green argues that she administratively exhausted the hostile work environment claim because she learned on October 11, 2019, that ASAC White had breached the July 2017 settlement agreement, and that she timely contacted her EEO counselor within 45 days of this discovery. Doc. 16 at 17. But Ms. Hueston Green does not explain how this revives her earlier hostile work environment claim, nor does she cite any authority for this proposition. *See*

*id.* at 17–18.

Ms. Hueston Green also argues that the Court should excuse her failure to timely exhaust her administrative remedies pursuant to 29 C.F.R. § 1614.105, which provides for an extension of the 45 days "when the individual shows . . . that he or she did not know and reasonably should not have [ ] known that the discriminatory matter or personnel action occurred." Doc. 16 at 18. Ms. Hueston Green asserts that she was entitled to rely on her 2017 settlement agreement "in thinking she was protected and would not be retaliated against by White," and that she did not know that ASAC White breached that agreement until October 2019. *Id.* But again, Ms. Hueston Green fails to explain how this relates to her hostile work environment claim as opposed to her retaliation claim. *See id.* Ms. Hueston Green failed to administratively exhaust her hostile work environment claim.

> 2. *The Court cannot determine whether Ms. Hueston Green administratively exhausted her retaliation claim from the face of the complaint.*

In support of his argument that Ms. Hueston Green did not administratively exhaust the portion of her retaliation claim that relates to ASAC White's complaint against her and the subsequent investigation, defendant relies on a document that the Court cannot consider without turning the motion into one for summary judgment. Specifically, defendant relies on portions of an FBI Office of Professional Responsibility (OPR) Proposal Letter dated May 24, 2019, in which the FBI OPR notifies Ms. Hueston Green that it is proposing that her employment be terminated. *See* Doc. 8-1. Defendant relies on this letter to support all his factual statements regarding when Ms. Hueston Green became aware of ASAC White's retaliatory acts against her. *See* Doc. 8 at 14–15 (citing Ex. 1 (Doc. 8-1)). Ms. Hueston Green does not refer to this letter in her complaint, nor is it central to her retaliation claim. *See generally* Doc. 1. She also disputes many of the statements made in the letter. *See* Doc. 16 at 21. Unlike the EEO complaint, Ms.

Hueston Green did not author the letter, and the letter is not central to her claim that she exhausted her administrative remedies.[5] The Court will not consider this letter in deciding a 12(b)(6) motion.[6] *See Alvarado*, 493 F.3d at 1215.

Based on the allegations in the complaint alone, the Court cannot determine that Ms. Hueston Green became aware of ASAC White's retaliation against her until she reviewed the investigative file on October 11, 2019. *See* Doc. 1 ¶¶ 39, 43, 76. Because she contacted an EEO counselor within 45 days of October 11, 2019, *see* Doc. 1 ¶ 7, the Court will deny defendant's motion to dismiss for failure to administratively exhaust the retaliation claim.

### C. At the pleading stage, Ms. Hueston Green states a claim for retaliation.

Title VII makes it unlawful to retaliate against an employee for opposing practices made unlawful by the statute. 42 U.S.C. § 2000e–3(a). As defendant acknowledges, the 12(b)(6)

---

[5] Defendant asserts that "[t]he Court may consider documents from the EEO proceedings without converting the Motion to Dismiss to a motion for summary judgment because the Complaint references the proceedings, *see* Doc. 1 ¶¶ 7–8, and these documents are central to Plaintiff's assertion that she 'exhausted her administrative remedies,' *id.* ¶ 9." Doc. 8 at 13. The problem with Exhibit 1, however, is that it is not part of the EEO proceedings. Exhibit 1 is a letter dated May 24, 2019, from the FBI's OPR informing Ms. Hueston Green that it was going to recommend that she be dismissed from the rolls of the FBI. *See* Doc. 8-1. The EEO proceedings did not begin until Ms. Hueston Green contacted the EEO office on October 22, 2019. *See* Doc. 1 ¶ 7; Doc. 8-2 (EEO complaint). Thus, Exhibit 1 was not part of the EEO proceedings, and the Court will not rely on it.

[6] Defendant cites two cases in support of his assertion that the Court may rely on the FBI's OPR letter in issuing its decision: *Barrett v. Rumsfeld*, 158 F. App'x 89, 91 n.1 (10th Cir. 2005) (unpublished) and *Dirkse v. Alticast Inc.*, No. 14-CV-02224-RM-NYW, 2015 WL 6125311, *9 n.7 (D. Colo. July 6, 2015) (unpublished). Doc. 8 at 13. Neither case is binding on this Court. In addition, neither case authorized the use of documents similar to the one that the defendant relies on here. In *Barrett*, the court noted that the district court could rely on public documents related to an administrative proceeding, particularly a right-to-sue letter, which was central to the timeliness of the filing of the plaintiffs' complaint in federal court. *Barrett*, 158 F. App'x at 91 n.1. In *Dirkse*, the court noted that it could rely on an EEOC charge and an amended charge in deciding a motion to dismiss because the plaintiff referred to both charges in her complaint. *Dirkse*, 2015 WL 6125311, at *9 n.7. The letter on which the defendant relies here is not public and is qualitatively different than the documents relied on in *Barrett* and *Dirkse*.

standard does not require Ms. Hueston Green to establish a prima facie case of retaliation in her complaint, but the elements of a prima facie case help to determine whether she has stated a plausible claim. *See Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also* Doc. 8 at 16. To state a prima facie case[7] of retaliation, a plaintiff must allege facts that show (1) "that [she] engaged in protected opposition to discrimination," (2) "that a reasonable employee would have found the challenged action materially adverse," and (3) "that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

---

[7] It is not appropriate to require a plaintiff to plead a prima facie case of discrimination in a Title VII case because a plaintiff may uncover direct evidence of discrimination during discovery. *See EEOC v. Roark-Whitten Hospitality 2, LP*, 28 F.4th 136, __, 2022 WL 711232, *9 (10th Cir. 2022). The Supreme Court has made clear that the *McDonnell Douglas* framework is an evidentiary standard, not a pleading standard, and it does not apply in all discrimination cases. *Swierkiewics v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). The parties did not raise this point so the Court will not belabor it, but should Ms. Hueston Green uncover direct evidence during discovery that retaliatory animus was a motivating factor in the decision to suspend and fire her, she would not be required to prove a prima facie case of retaliation. *See id.* ("[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."); *see also Fye v. Oklahoma Corp. Com'n*, 516 F.3d 1217, 1224–25 (10th Cir. 2008) ("To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways. Under what is often characterized as a 'mixed-motive' theory, the plaintiff may directly show that retaliatory animus played a 'motivating part' in the employment decision. . . . Once the plaintiff proves that retaliatory animus was a motivating factor, the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the retaliatory motive. . . . If, however, the plaintiff is unable to directly establish that retaliation played a motivating part in the employment decision at issue, she may rely on the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered reason for its decision is a pretext for retaliation."). Because I find that Ms. Hueston Green has pled sufficient facts that show a plausible causal connection between her protected activity and the adverse actions against her, I will not analyze whether she also pleads sufficient facts to show that retaliatory animus plausibly played a motivating role in the decision to suspend her and terminate her employment.

Defendant argues that Ms. Hueston Green's retaliation claim is fatally deficient because she does not plead sufficient facts to meet the third element of a retaliation claim—the causal connection between the protected activity and the materially adverse action. Doc. 8 at 22–25. He argues that Ms. Hueston Green "has alleged no facts showing any retaliatory animus," and that looking at temporal proximity alone, the time between the protected activity and the adverse employment action was far too long to support an inference of causation. *Id*. at 22. Construing the allegations in the complaint in light most favorable to Ms. Hueston Green, I disagree.

In this case, there is no dispute that Ms. Hueston Green's suspension and termination were materially adverse actions. The defendant suggests that ASAC White's complaint and the resulting investigation of Ms. Hueston Green arguably were not materially adverse actions. Doc. 8 at 23. But even if they were, defendant contends that the year that elapsed between the settlement of Ms. Hueston Green's EEO complaint against ASAC White and ASAC White's complaint against Ms. Hueston Green is too long to support an inference of retaliation. *See id.* at 23–24. Defendant further contends that the time between 2017 settlement and Ms. Hueston Green's suspension and termination was even longer, which also does not support an inference of retaliation. *See id.* This analysis, however, separates each act from every other act, and fails to view the facts as a whole. *See Sunderman v. Westar Energy, Inc.*, 307 F. App'x 224, 229 (10th Cir. 2009) (unpublished) ("[T]he court should have considered the prior retaliation alleged by plaintiff as background evidence when considering plaintiff's claim that he was terminated in retaliation for filing his complaint with the [Kansas Human Rights Commission]."); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104 (2002) (Title VII does not "bar an employee from using . . . prior [time-barred discrete discriminatory and retaliatory] acts as background evidence in support of a timely claim.").

Viewing the allegations in the complaint in the light most favorable to Ms. Hueston Green, the complaint establishes that immediately after Ms. Hueston Green filed an EEO complaint against ASAC White, ASAC White started looking for ways to get rid of Ms. Hueston Green. As part of this campaign, ASAC White directed two employees to spy on Ms. Hueston Green and gather information about her that he could use to try to get her fired. Some of the information that he gathered was raised during Ms. Hueston Green's EEO proceedings against him, but ultimately, that case was settled. ASAC White, though, continued his campaign against Ms. Hueston Green, and continued to gather information against her. Rather than raise the information he was gathering as it became known to him, he compiled it. He waited until one week before his retirement to submit his complaint against Ms. Hueston Green so that he would not face any repercussions for his retaliation. Ms. Hueston Green did not know about ASAC White's campaign as he was carrying it out; she only learned about it by reviewing the materials in the FBI's investigative file.

Based on ASAC's White's complaint and the materials he submitted, the FBI conducted an investigation of Ms. Hueston Green, which took several months. The official who agreed to forward ASAC White's complaint for investigation was the same official who signed off on the settlement of Ms. Hueston Green's EEO complaint against ASAC White, and he was well aware of the history between ASAC White and Ms. Hueston Green. This same official then became the director of the section that conducted the investigation of Ms. Hueston Green. That investigation resulted in a recommendation that Ms. Hueston Green be terminated, which she ultimately was. Thus, but for ASAC White's campaign of retaliation against Ms. Hueston Green, which started immediately after Ms. Hueston Green's EEO complaint against ASAC White, there would have been no investigation, and Ms. Hueston Green would not have been suspended or terminated.

Although it remains to be seen whether Ms. Hueston Green is able to prove her retaliation claim, viewing the allegations in the complaint in the light most favorable to Ms. Hueston Green, she states a plausible claim of retaliation.

### IV.     Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendant Merrick B. Garland's Motion to Dismiss for Failure to State a Claim (Doc. 8).  The Court dismisses without prejudice Ms. Hueston Green's hostile work environment claim for failure to exhaust her administrative remedies.  The Court DENIES defendant's motion to dismiss Ms. Hueston Green's retaliation claim.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent