IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE HUESTON GREEN,

    Plaintiff,

vs.                                                                                                                1:21-cv-00087-LF-JMR

MERRICK B. GARLAND,[1]
Attorney General, U.S. Department of Justice,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendant Merrick B. Garland's Motion for [Partial] Summary Judgment. Doc. 61. Plaintiff Michelle Hueston Green opposes the motion. Doc. 72. Having considered the parties' submissions and the relevant law, and for the following reasons, I GRANT defendant's motion.

This case arises out of Ms. Hueston Green's employment with the Federal Bureau of Investigation ("FBI"), and her ultimate termination. She claims that former Assistant Special Agent in Charge (ASAC) Robert White filed a complaint against her on the eve of his retirement in retaliation for the Equal Employment Opportunity (EEO) complaint Ms. Hueston Green had filed against him in May 2017. After ASAC White submitted his complaint, the FBI investigated her, suspended her without pay, and ultimately terminated her employment.

In his motion for partial summary judgment, defendant argues that Ms. Hueston Green was obligated to contact an EEO counselor within 45 days of any claimed retaliation. *See* Doc.

---

[1] Merrick B. Garland is automatically substituted for Jeffrey A. Rosen pursuant to FED. R. CIV. P. 25(d).

61. Because Ms. Hueston Green failed to contact at EEO counselor within 45 days of receiving notice that a complaint had been filed and that she was under investigation, and also did not do so when she was suspended without pay, Ms. Hueston Green failed to timely exhaust any retaliation claim based on those events.  *See id.*  Ms. Hueston Green argues in response that defendant has waived his right to assert this limitations-based affirmative defense.  Doc. 72 at 24–25.  She also argues that there are material facts in dispute regarding when the 45-day clock began to run, or at least that there are material facts in dispute regarding whether equitable tolling should apply to extend the 45-day time period.  *Id.* at 25–34.  For the following reasons, I agree that the undisputed material facts show that Ms. Hueston Green failed to timely exhaust her administrative remedies for any retaliation claim based on ASAC White's misconduct complaint, the resulting investigation, and her suspension without pay.  I therefore grant defendant's motion.

I. **Statement of Undisputed Facts**[2]

Plaintiff Michelle Hueston Green began working for the FBI on December 2, 1990. AMF 1.  She became a Supervisory Financial Operations Specialist in Albuquerque in October 2012.  *Id.*  Ms. Hueston Green worked for the FBI for 29 years.  *Id.*

---

[2] Although Ms. Hueston Green purportedly disputes many of defendant's Undisputed Material Facts (UMFs), most of her "disputes" are in reality assertions that there are Additional Material Facts (AMFs) that the Court also should consider.  The Court thus recounts and relies on the UMFs and AMFs about which there is no actual dispute.  Defendant's UMFs appear at pages 2 through 7 of his motion.  Doc. 61 at 2–7.  Plaintiff's AMFs appear at pages 6 through 22 of her response.  Doc. 72 at 6–22.

For facts that the parties say they dispute or partially dispute, or which are not cited in the materials, the Court cites to the underlying exhibits and other materials in the record, as necessary.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

On May 4, 2017, Ms. Hueston Green filed an EEO complaint against her supervisor, ASAC Robert White, alleging that he mistreated her and made "an inappropriate sexual comment . . . concerning her cleavage on a performance evaluation (PAR)."  UMF 2.  The 2017 EEO complaint resulted in a settlement in July 2017.  *Id*.  ASAC White knew about the complaint, participated in the mediation that settled it, and ultimately was required to make changes in his evaluation of Ms. Hueston Green.  AMF 22.  In the settlement agreement, the FBI "agree[d] there shall be no discrimination or retaliation of any kind against the Aggrieved [Ms. Hueston Green] as a result of filing this charge . . . ."  Doc. 72-13 at 2, ¶ 6.

About a year later, in approximately June 2018, ASAC White submitted information to the FBI Inspection Division (INSD) concerning Ms. Hueston Green's conduct.  UMF 3.  Ms. Hueston Green "asserts that she did not know until October 2019 that [ASAC] White was the one who filed the complaint," Doc. 72 at 3, ¶ 3, but she does not dispute that ASAC White did so in June 2018, shortly before he retired, *see id*.  ASAC White retired from the FBI on June 30, 2018.  UMF 4.  INSD began investigating ASAC White's allegations beginning in August 2018.  UMF 5.  The INSD investigation involved allegations that Ms. Hueston Green was engaging in outside employment without prior authorization while on duty and using FBI property, had provided misleading information related to fiscal matters, and had misused government property.  UMF 6; Doc. 61-3.  On August 27, 2018, Special Agent in Charge (SAC) James Langenberg notified Ms. Hueston Green of the INSD investigation, and Ms. Hueston Green signed the notification letter.  UMF 7; Doc. 61-3.

Three days later, on August 30, 2018, Ms. Hueston Green used an FBI computer and engaged in the following instant message exchange with a colleague:

> Plaintiff: that sonofabitch is still haunting me and trying to ruin my career
> Colleague: White?

| | | |
|---|---|---|
| Plaintiff: | yep<br>can you say . . . .<br>O P R ??? | |
| Colleague: | Yea…I had to go to my program and have them threaten to go up the chain.  They backed me 100%<br>that is Bs. | |
| Colleague: | I hope that man pays for the crap he has done | |
| Plaintiff: | I'm back in hell… | |
| Colleague: | hang in there<br>if there is anything I can do…let me know<br>I can vouch he was a vindictive a$$ | |
| Plaintiff: | he filed charges against me right before he left for stuff that happened 1 ½ years ago and had been r[e]solved, held against me on my PAR, etc.<br>I'm going to tell them that its reprisal for the EEO I file[d] last year | |
| Colleague: | wow…sounds like what he did to me, right before walking out the door<br>fight it | |

\* \* \*

| | |
|---|---|
| Colleague: | My program told me he was out to get rid of me too.  Thank god they backed me |
| Plaintiff: | I am going to I just pray it works |
| Colleague: | I think it will. |

UMF 8; AMF 33.  Because Ms. Hueston Green had filed an EEO complaint in May 2017, she was aware in August 2018 that she had to contact an EEO counselor within 45 days of when she "learn[ed] of the issue."  *See* UMF 9; Doc. 61-4 at 2.

Once the INSD investigation was underway, several of Ms. Hueston Green's colleagues submitted signed, sworn statements (SSSs) that indicated that Ms. Hueston Green had told them that she was under investigation, and that she believed that ASAC White had instigated the investigation in retaliation for the EEO complaint she had filed against him.  *See* UMFs 10–12. On September 27, 2018, Administrative Officer Jolene E. Rael submitted an SSS that stated:

> FM Green called me recently to ask about a year-end matter and during the call advised me that she was called into the Special Agent in Charge's (SAC) office about the investigation.  She said she might not have a job.  FM Green said that people would be coming out to do interview.  She also advised that ASAC White launched something against her out of retaliation right before he retired and stated that she felt it was personal.

4

UMF 10. On November 15, 2018, Communications Manager Jason T. Myers submitted an SSS that stated:

> I became aware of the OPR investigation a couple of months ago from Ms. Green. She was venting about former Assistant Special Agent in Charge (ASAC) Robert White being out to get her one way or another. She told me the allegation against her related to her outside employment not being properly documented.

UMF 11. On November 20, 2018, Special Agent Michael Anthony submitted an SSS that stated:

> I became aware of the internal investigation of Ms. Green sometime in July or August of 2018. Ms. Green informed me about the investigation against her. I was aware that there were issues between [ASAC] Robert White and Ms. Green, as we had talked about it in the past. Ms. Green told me that ASAC White gave her a parting shot by referring her to OPR right before he retired.

UMF 12.[3]

> In her own SSS, dated December 6, 2018, Ms. Hueston Green stated:
>
> I think I was in a state of shock over the situation when I was notified of the [INSD] allegations. . . . Everything in the allegations had been brought up in my mid-year Performance Review, which had led to the filing of an Equal Employment Opportunity (EEO) complaint by myself.

UMF 13. She also stated, "I 100% believe that ASAC White waited until the week he officially retired from the Bureau to file allegations as he was doing so as retaliation and knew that I could file a new EEO complaint for his actions." UMF 16. At her deposition, in speaking about this statement, Ms. Hueston Green agreed that "100 percent means there's no room for doubt." UMF 17.

---

[3] Ms. Hueston Green admits that her colleagues made these statements but complains that defendant does not cite to other relevant portions of their statements. *See* Doc. 72 at 4–5, ¶¶ 10–12. The Court, however, finds that the additional portions of the statements that Ms. Hueston Green points to are not material. *See, e.g.*, AMFs 41, 59–60. Ms. Hueston Green suggests that the additional statements show that when she was speaking to Special Agent Anthony, she was "just venting," and that portions of Ms. Rael's SSS and Mr. Myers' SSS show that the termination was unjust. *See id.* But whether Ms. Hueston Green was "just venting," and whether the termination was unjust are not relevant to the issue before the Court. The relevant issue is whether Ms. Hueston Green knew of the adverse employment action, and whether she contacted the EEO counselor within 45 days of discovering that action.

On May 24, 2019, Jessica Loreto, Unit Chief of Adjudication Unit II of the Office of Professional Responsibility ("OPR"), sent Ms. Hueston Green a letter notifying her that Unit Chief Loreto had completed her review of the administrative inquiry into the allegations of misconduct against Ms. Hueston Green.  UMF 18.[4]  Unit Chief Loreto proposed that Ms. Hueston Green be dismissed from the FBI for the reasons set forth in the letter.  *Id.*  Unit Chief Loreto's 20-page OPR Proposal Letter described much of the evidence that INSD had amassed during its investigation, including numerous references to information obtained from ASAC White.  UMF 19.  For example, the OPR Proposal Letter noted that "ASAC [White] asked [a Financial Operations Specialist] to keep a log of the hours [Ms. Hueston Green] w[as] present at work."  *Id.*

On May 23, 2019, Keri Vislocky, Unit Chief of the FBI Performance Appraisal Unit for the Human Services Division, sent Ms. Hueston Green a letter advising her that she was suspended indefinitely from duty and pay effective upon receipt of the letter.  UMF 20.  On October 11, 2019, Ms. Hueston Green and her attorney "reviewed all of the documentation involved in the OPR investigation . . . and learned that it was in fact ASAC White who lodged the complaint."  UMF 21.  According to Ms. Hueston Green, it was only then that "it was certain that the allegations against Plaintiff had been filed as retaliation to the original EEO she filed against White."  *Id.*  Eleven days later, on October 22, 2019, Ms. Hueston Green initiated contact with an EEO counselor.  UMF 22.

---

[4] Ms. Hueston Green admits she "received the letter, but dispute[s] the accuracy of the contents of the letter, or that it included all the evidence amassed during the investigation."  Doc. 72 at 6, ¶¶ 18, 19.  The important fact is that Ms. Hueston Green received the letter, and that the letter itself stated that ASAC White provided substantial information on which the investigation was based, not whether the letter was accurate.

On December 4, 2019, Ms. Hueston Green, through her attorney, submitted a formal complaint of discrimination.  UMF 23.  In the narrative portion of the Formal Complaint, Ms. Hueston Green alleged that ASAC White had "compiled hearsay information from disgruntled employees and required his other employees to 'spy' on [her]," then "specifically waited until June 2018, approximately one year after the original EEO Ms. Hueston Green had filed against him, and one week prior to his retirement, to submit allegations from a year of compiled hearsay from prior to the original EEO, as well as afterwards, to the OPR Division."  UMF 24.  The Formal Complaint also stated, "[i]t is obvious based on the timing of the August 2018 OPR filing, which occurred one week before [ASAC] White's retirement, as well as the contents of his collection of hearsay documents, that [ASAC] White filed the OPR against Ms. Hueston Green in retaliation for the original EEO filed against him in 2017."  UMF 25.

On November 5, 2020, the FBI issued its Final Agency Decision denying Ms. Hueston Green's Formal Complaint.  UMF 26.  The Final Agency Decision found that, "no later than September 2018, [Ms. Hueston Green] had reasonable suspicion that [ASAC] White had engaged in retaliation against her" but "did not make an EEO complaint in that regard until over a year later, which is plainly outside the 45-day filing window for EEO claims."  UMF 27.  Accordingly, the Final Agency Decision concluded that Ms. Hueston Green's allegation regarding the INSD complaint "was untimely filed."  *Id.*

## II.     The Complaint and Defendant's Motion

The single count in Ms. Hueston' Green's complaint alleges a violation of Title VII of the Civil Rights Act of 1964 based on a hostile work environment and retaliation for protected EEO activity.  Doc. 1 at 11.  The Court dismissed Ms. Hueston Green's hostile work environment claim on March 31, 2022.  Doc. 20.  Her retaliation claim, however, remains.  *See id.*  In her

complaint, Ms. Hueston Green alleges that the FBI retaliated against her after she complained about ASAC White and his treatment of her, and that her "complaints about ASAC White were a substantial factor in the decision to lodge a complaint and investigation against her."  Doc. 1 ¶¶ 86–87.  In his motion for partial summary judgment, defendant seeks summary judgment in his favor on the retaliation claim to the extent it is based on the submission of ASAC White's misconduct complaint against Ms. Hueston Green, the resulting investigation, and Ms. Hueston Green's suspension without pay at the conclusion of the investigation.  Doc. 61 at 1.  Defendant's motion does not address Ms. Hueston Green's retaliation claim to the extent it is based on her termination.  *Id.* at 1 n.1.

### III. Discussion

#### A. Legal Standard for Summary Judgment

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if under the substantive law it could affect the outcome of a lawsuit, and an issue is "genuine" if a rational juror could find in favor of the nonmoving party on the evidence presented.  *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim."  *Kannady v.*

*City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment."  *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*  Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative."  *Id.* at 249–50 (internal citations omitted).

B.  **Exhaustion of Administrative Remedies**

Defendant argues that the Court should grant partial summary judgment in his favor on Ms. Hueston Green's retaliation claims to the extent they are based on ASAC White's misconduct complaint, the resulting investigation, and her suspension without pay because Ms. Hueston Green did not contact an EEO counselor within 45 days of her learning of these

9

retaliatory acts. Doc. 61 at 8–11. Defendant also argues that Ms. Hueston Green is not entitled to an extension of the 45-day limitations period. *Id.* at 11–12. Ms. Hueston Green argues that defendant has waived his right to assert this limitations defense. Doc. 72 at 24–25. She also argues that there are material facts in dispute about when the retaliatory act or personnel action accrued, or at least about whether equitable tolling should apply. *See id.* at 25–34. For the reasons explained below, I agree that there is no genuine dispute that Ms. Hueston Green had, by no later than May 24, 2019, substantial reason to believe that ASAC White filed his complaint against her in retaliation for her EEO complaint against him. There also is no genuine dispute that Ms. Hueston Green was investigated because of that complaint, and that she was suspended without pay on or about May 23, 2019, yet she did not contact an EEO counselor until October 22, 2019, more than 150 days later. Ms. Hueston Green failed to timely exhaust these claims.

"Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (internal quotation marks and citation omitted). Part 1614 of Chapter 29 of the Code of Federal Regulations sets forth the applicable procedures. *See id*. "Before a federal civil servant can sue h[er] employer for [discrimination or retaliation], [s]he must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.' " *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 CFR § 1614.105(a)(1)). The employee also must file a formal complaint with the agency that is "sufficiently precise . . . to describe generally the action(s) or practice(s) that form the basis of the complaint." 29 C.F.R. §§ 1614.106(a), (b), (c). Once the employee receives the agency's final decision, the employee must file a civil action in federal district court within a specified

period if the employee is dissatisfied with the agency's decision.  *See* 29 C.F.R § 1614.110.

The exhaustion requirement is a claims-processing rule that an employer may raise as an affirmative defense; it is not a jurisdictional prerequisite to filing suit.  *Hickey*, 969 F.3d at 1118; *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) ("[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.").  It therefore is subject to the same waiver and estoppel principles that apply to other affirmative defenses, *Lincoln*, 900 F.3d at 1186 n.11, although courts should apply such equitable doctrines sparingly, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Because it is a mandatory rule, courts must enforce the exhaustion requirement if the employer properly raises it.  *See Davis*, 139 S. Ct. at 1849–51.

> 1. *Ms. Hueston Green failed to timely exhaust her retaliation claim to the extent it is based on ASAC White's misconduct complaint, the resulting INSD investigation, and her suspension without pay.*

"[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his [or her] charge within the appropriate time period."  *Morgan*, 536 U.S. at 122.  Each discrete act of retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."  *Martinez v. Potter*, 347 F.3d 1209, 1210 (10th Cir. 2003); *see also Morgan*, 536 U.S. at 114 ("[E]ach retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' ").  Generally, this "means that a claim accrues when the disputed employment practice . . . is first announced to the plaintiff." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011).  If an employee is

not notified of the adverse action, then the claim "accrues when a reasonable employee would have known of the employer's retaliatory action." *Jensen v. W. Jordan City*, 968 F.3d 1187, 1203 (10th Cir. 2020) (internal quotation marks omitted).  In any circumstance, "an employee who discovers, or should have discovered, the *injury* (the adverse employment decision) need not be aware of the unlawful *discriminatory intent* behind that act for the limitations clock to start ticking." *Almond*, 665 F.3d at 1177 (emphasis in original).  Furthermore, the limitations clock does not wait until "the adverse consequences flowing from the challenged employment action hit the employee." *Id*.

Here, any discrete act that occurred before September 7, 2019 (45 days before October 22, 2019, the date Ms. Hueston Green contacted an EEO counselor) is barred for failure to timely exhaust that claim.  ASAC White's submission of the misconduct complaint and the resulting INSD investigation were both discrete acts,[5] as was Ms. Hueston' Green's suspension without pay.  *See Daneshvar v. Graphic Technology, Inc.*, 237 F. App'x 309, 317 (10th Cir. 2007) (Employee's "suspension and termination were discrete incidents each of which required explicit exhaustion of administrative remedies."); *Mora v. Ashcroft*, 142 F. App'x 206, 207 (5th Cir. 2005) (per curiam) (allegedly retaliatory investigation of misconduct "was a discrete act"); *Ust v. Borough of Englewood Cliffs*, No. CV 17-13051, 2018 WL 4145905, at *4 (D.N.J. Aug. 30, 2018) (filing an internal affairs complaint is a discrete act); *Arabalo v. City of Denver*, No. 11-CV-02343-MSK-MEH, 2013 WL 10871817, at *18 (D. Colo. Aug. 26, 2013) ("the commencement of an investigation into alleged misconduct is a discrete act"), *aff'd*, 625 F.

---

[5] Defendant takes the position in his other Motion for Summary Judgment (Doc. 62) that ASAC White's misconduct complaint and the resulting INSD investigation do not constitute adverse employment actions.  Doc. 62 at 16 n.5.  Although the Court is inclined to agree, that point is not raised in this motion, and the Court need not decide that issue because even if they were adverse employment actions, Ms. Hueston Green did not timely exhaust them.

App'x 851 (10th Cir. 2015).  Because Ms. Hueston Green was notified of these adverse employment actions well before September 7, 2019, her retaliation claims based on these acts are barred.

Ms. Hueston Green argues that there are material facts in dispute about when her claim accrued, relying on *Green v. Brennan*, 578 U.S. 547 (2016).  *See* Doc. 72 at 25–26.  *Green*, however, is inapposite.  In *Green*, the Court held that the limitations period for a constructive discharge claim is triggered when the employee gives notice of his resignation, not on the last day of his employment.  *Id.* at 563–64.  In other words, notice of the adverse action triggers the limitations period.  Ms. Hueston Green asserts that the holding in *Green* means that she needed more than a "mere suspicion in order to have a complete and present claim and thus be expected to . . . contact[ ] an EEO counselor about that claim"—essentially that she needed firm proof of retaliatory motive before contacting an EEO counselor.  Doc. 72 at 26.  The Tenth Circuit has rejected that view.

In *Hulsey v. Kmart*, 43 F.3d 555 (10th Cir. 1994), the Tenth Circuit addressed whether the limitations period for filing a Title VII action is tolled until the plaintiff knew or should have known that the unfavorable job action was based on illegal motives.  In *Hulsey*, the two plaintiffs experienced adverse employment actions in 1989 and 1990.  43 F.3d at 556.  After watching a television program that aired in December 1992, the plaintiffs came to suspect for the first time that they had been victims of age discrimination.  *Id*. at 557.  They argued that the limitations period should be tolled until December 1992, the date when they first suspected that the adverse job actions may have been motivated by age discrimination.  *Id*.  The Tenth Circuit held that notice or knowledge of a discriminatory motive is not a prerequisite for a cause of action to accrue under Title VII.  *Id*. at 558.  The court stated, "[o]n the contrary, it is knowledge of the

adverse employment decision itself that triggers the running of the statute of limitations." *Id*. at 558–59.  The Tenth Circuit agreed with the reasoning of the Fourth Circuit, which held:

> It is not necessary to the filing of a charge that one possess a proven case. . . .  [I]t is not necessary for a claimant to know all of the evidence upon which he will ultimately rely at trial in order to file a charge with the EEOC.  We may presume that many facts will come to light after the date of an employee's termination, and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them.

*Id.* at 558 (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 202–03 (4th Cir. 1990) (internal quotation marks and citations omitted)).

Nothing in *Green* suggests that Ms. Hueston Green needed to know all the facts that supported her retaliation claim before she contacted an EEO counselor.  Even if there were a requirement that Ms. Hueston Green know the retaliatory nature of these adverse actions, Ms. Hueston Green voiced her strong suspicion of the retaliatory nature of the misconduct complaint and INSD investigation in August and September 2018.  In December 2018, she told investigators that she had no doubt that ASAC White filed the complaint against her in retaliation for her 2017 EEO complaint against him.  In May 2019, when she was informed that she would be suspended without pay effective immediately, she also was informed that several of the misconduct allegations against her stemmed from information obtained from ASAC White.  Thus, by May 2019, Ms. Hueston Green had more than enough information to contact an EEO counselor about her claim of retaliation.  Although Ms. Hueston Green asserts that she was not certain of the retaliatory nature of ASAC White's complaint and the resulting investigation until she viewed the INSD file, certainty is not required.  To the extent that Ms. Hueston Green's retaliation claim is based on ASAC White's misconduct complaint, the resulting INSD investigation, and her suspension without pay, these claims are barred.[6]

---

[6] This ruling has no bearing on whether any of these adverse employment actions would be

14

      2. *Defendant did not waive his right to assert the 45-day limitations defense.*

  Ms. Hueston Green argues that "defendant waived the defense of untimely exhaustion by reaching the merits of her reprisal claim at the administration level." Doc. 72 at 24. She says that because the FBI accepted her formal complaint for investigation and did not dismiss it as untimely, defendant waived its right to raise the timeliness issue. *Id.* This argument has no merit.

  First, and as defendant correctly points out, when the FBI accepted Ms. Hueston Green's Formal Complaint for investigation, it was relying on her representation that the date on which the most recent alleged discrimination took place was October 11, 2019. *See* Doc. 72-3 at 1. That was the day that Ms. Hueston Green and her lawyer reviewed all the materials in the INSD investigative file. *See id.* at 2. Once the investigation was completed, however, the FBI concluded that no later than September 2018, Ms. Hueston Green had "reasonable suspicion that White had engaged in retaliation against her" but "did not make an EEO complaint in that regard until over a year later," well outside the 45-day limit. UMF 27; Doc. 61-10 at 3. Thus, the FBI decided that Ms. Hueston Green's complaint regarding ASAC White's misconduct complaint and the resulting INSD investigation was not timely filed. *Id.*

  Second, and as defendant also correctly points out, Ms. Hueston Green provides no authority to support her position that defendant waived his right to raise this 45-day limitations defense. Ms. Hueston Green cites to a regulation that no longer is in effect and a 1985 D.C. Circuit opinion that is not binding on this Court. The case that she relies on—*Brown v. Marsh*, 777 F.2d 8 (D.C. Cir. 1985)—declined to dismiss a Title VII claim for lack of exhaustion under

---

admissible at trial as background evidence in support of a properly exhausted claim. *See Martinez*, 347 F.3d at 1211 (the limitations statute does not bar "an employee from using prior acts as background evidence in support of a timely claim") (quoting *Morgan*, 536 U.S. at 113).

extreme and narrowly defined circumstances.  That "inordinately complex" case was part of a long-running struggle between an African American civilian employee and his employer, the U.S. Department of the Army, in which the parties had contested the plaintiff's discrimination claims for "a full ten years."  *See* 777 F.2d at 9, 15.  The court explained that "the Army's conduct in the more than ten years that [the plaintiff] has been in formal and informal contact with it regarding the matters complained of in this suit" waived its exhaustion argument, because the Army "led [the plaintiff] to believe that it was considering and investigating his complaints," did not "reject any complaints it considered untimely" during the administrative process, and went "far beyond mere investigation" to resolve the complaint.  *See* 777 F.2d at 15–16.  That is not this case.  Indeed, the *Brown* court noted that it was "loath to hold that mere investigation without more constitutes a binding waiver of any agency's right to raise the timeliness issue"; it merely held that under the unusual and extreme circumstances of that case, the Army had waived its timeliness objection.  *Id.* at 15.  *Brown* does not support Ms. Hueston Green's argument that defendant waived its right to raise the 45-day limitations defense.

In addition, several Circuits have ruled that when an agency accepts and investigates a complaint of discrimination, it does not waive a defense of untimely exhaustion.  *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004); *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001); *Ester v. Principi*, 250 F.3d 1068, 1072 n.1 (7th Cir. 2001); *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir.1985)).  Instead, "[a]n agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness."  *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002).  Although the Tenth Circuit does not appear to have ruled on this issue, I see no reason

that it would rule differently.

Third, Ms. Hueston Green argues that in his answer, defendant only asserted the affirmative defense of "failure to exhaust administrative remedies," not a statute of limitations defense. Doc. 72 at 25. She fails to mention, however, that when defendant originally responded to Ms. Hueston Green's complaint, he did so by filing a motion to dismiss that was based in part on the same timeliness issue he raises here. *See* Doc. 8 at 13–15. Further, defendant's answer raises the affirmative defense not only of "failure to exhaust administrative remedies," but also "failure to *timely* exhaust administrative remedies." Doc. 22 at 9 (emphasis added). Defendant did not waive his right to raise the 45-day limitations defense.

> 3. *Ms. Hueston Green is not entitled to extension of the 45-day limitations period, nor does equitable tolling apply.*

Ms. Hueston Green argues that there are material facts in dispute regarding whether she is entitled to an extension of the 45-day limitations period under the regulations or equitable tolling. Doc. 72 at 29–34. Ms. Hueston Green is not entitled to an extension of the 45-day limitations period under either theory.

Under the applicable regulation,

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a). Here, Ms. Hueston Green admitted she was aware of the requirement that she contact an EEO counselor within 45 days to make a formal

complaint, UMF 9; indeed, she had engaged in the same process in 2017, UMF 2. Her own statements make clear that she had a reasonable belief in late 2018 that ASAC White had retaliated against her, and in May 2019, the FBI confirmed that many allegations relating to her misconduct came from ASAC White. Although Ms. Hueston Green says she relied on her 2017 settlement agreement with the FBI in assuming that she would not be retaliated against, Doc. 72 at 31, that same settlement agreement provided that "[i]f either party alleges a breach of the terms of this Settlement Agreement, the alleging party must notify the FBI's EEO Officer, in writing, of the alleged noncompliance within thirty (30) calendar days of when the party knew or should have known of the alleged breach," Doc. 72-13 at 2. Thus, the parties contemplated the possibility that either side might breach the settlement agreement, and if Ms. Hueston Green believed that a breach occurred, she was required to notify the EEO Officer within 30 days—an even shorter period than permitted under the regulation. Ms. Hueston Green presents no evidence that would support an extension of the 45-day limitations period under the regulation.

Equitable tolling "is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff is lulled into inaction by her past employer, state or federal agencies, or the courts." *Hulsey*, 43 F.3d at 557 (internal quotation marks omitted). Equitable tolling will not apply "unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Id*. (internal quotation marks omitted). Similarly, "it is generally accepted that when an employer misleads an employee regarding a cause of action, equitable estoppel may be invoked." *Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421, 1427 (10th Cir. 1984). "Courts may evaluate whether it would

be proper to apply such doctrines, although they are to be applied sparingly." *Morgan*, 536 U.S. at 113.  Again, Ms. Hueston Green presents no facts that would warrant equitable tolling.  She has not presented any facts to suggest that the FBI lulled her into inaction or took any action that prevented or discouraged her from contacting an EEO counselor before October 2019.  Equitable tolling does not apply.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS defendant Merrick B. Garland's Motion for [Partial] Summary Judgment (Doc. 61).  The Court enters judgment in defendant's favor with respect to plaintiff Michelle Hueston Green's retaliation claim to the extent that it is based on ASAC White's filing of the misconduct complaint, the resulting INSD investigation, and her suspension without pay.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent